UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LORYNN D. SERNA,

    Plaintiff,

v.                                                                                         Civ. No. 16-1176 GJF

NANCY A. BERRYHILL, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Remand and Supporting Brief" ("Motion") filed on March 13, 2017. ECF No. 20. The Commissioner responded on May 12, 2017. ECF No. 22. Plaintiff replied on May 26, 2017. ECF No. 23. Having meticulously reviewed the briefing and the entire record, the Court concludes that Plaintiff's Motion is well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **REVERSED** and **REMANDED**. Therefore, and for the reasons articulated below, the Court will **GRANT** Plaintiff's Motion.

**I. BACKGROUND**

Plaintiff was born in New Mexico on October 18, 1968. Administrative R. ("AR") 51, 444. Plaintiff joined the U.S. Army in 1988, where she served for four years as a mechanic and deployed overseas during Operation Desert Storm. AR 54. Following her honorable discharge in 1992, she received an associate degree from Northern New Mexico Community College and worked from 1994 to her alleged onset date as an x-ray technologist. AR 51-52.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 1, 2012. AR 186-93. Plaintiff claimed disability beginning on January 31, 2012, based on fibromyalgia,

1

degenerative disc disease, post-traumatic stress disorder ("PTSD"), Crohn's disease, migraines, gynecological problems, multiple sclerosis, dyshidrotic eczema from Gulf War syndrome, fingernails falling off from Gulf War syndrome, and irritable bowel syndrome.[1] AR 87-88.

The Social Security Administration ("SSA") denied Plaintiff's application initially on September 10, 2012 [AR 100], and upon reconsideration on May 20, 2013. AR 112. At her request, Plaintiff received a *de novo* hearing before ALJ Michelle Lindsay on January 12, 2015, at which Plaintiff, her attorney, and vocational expert ("VE") Thomas Greiner appeared. AR 46-86. On May 7, 2015, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). AR 40. Plaintiff appealed to the SSA Appeals Council, but it declined review on September 17, 2016. AR 1-4. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017).

Plaintiff timely filed her appeal with this Court on October 26, 2016. ECF No. 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff advances numerous grounds for relief. First, she argues that the ALJ's step three analysis is both fraught with legal error and bereft of evidentiary support. Pl.'s Mot. 5-9, ECF No. 20. Second, Plaintiff contends the ALJ committed legal error by misstating the burden of proof at step five. *Id.* at 9-10. Third, she claims the ALJ failed to follow Social Security Ruling ("SSR") 00-4p and relevant case law by neglecting to ask the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT").[2] *Id.* at 10-11. Fourth, Plaintiff alleges multiple deficiencies in the ALJ's calculation of Plaintiff's residual functional capacity.

---

[1] Because claimants self-report their allegedly disabling conditions, the ailments claimed are often somewhat vernacular, vague, and non-technical.

[2] The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2017). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2017).

*Id.* at 11-14. Fifth, Plaintiff argues that the ALJ erroneously evaluated medical evidence from: (1) the U.S. Department of Veterans Affairs ("VA") generally; (2) VA clinical psychologist Maureen M. McAndrews, Ph.D; and (3) consultative psychologist Robert Krueger, Ph.D. *Id.* at 14-19. Sixth, Plaintiff challenges the ALJ's criticism of her VA disability rating. *Id.* at 19-21. Seventh, she contends that the ALJ's adverse credibility finding is without evidentiary basis. *Id.* at 21-24. Lastly, she argues that the ALJ incorrectly applied governing standards in evaluating the statements of Plaintiff's husband and daughter.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[3] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.").

Factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere

---

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2017); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court examines "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B. Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2017). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App. 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the

ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). [Plaintiff] bears the burden of proof on the question of disability for the first four steps. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, the burden shifts to the Commissioner at the fifth step to show that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. THE ALJ'S DECISION

The ALJ issued her decision on May 7, 2015. AR 40. At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 31, 2012. AR 32. At step two, the ALJ found Plaintiff to suffer from numerous severe impairments, including: (1) fibromyalgia; (2) mild degenerative disc disease of the lumbar spine; (3) Crohn's disease; (4) migraines; (5) depressive disorder; and (6) PTSD. AR 32. The ALJ declined, however, to find that Plaintiff suffered from multiple sclerosis ("MS"). Rather, she opined that "there is no evidence of [Plaintiff] ever having a diagnosis of MS," and therefore "a lack of objective evidence to substantiate the existence of a medically determinable impairment of multiple sclerosis." AR 32-33.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 33-34. This finding included an analysis of Plaintiff's mental impairments, which the ALJ found did not meet or medically equal the criteria of Listing Sections 12.04 (affective disorders), 12.06 (anxiety-related disorders), or 12.09 (substance addiction disorders). [4] AR 24-26.

The ALJ found that the paragraph B criteria of Listings 12.04 and 12.06 were not met "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." AR 34. She then explained her reasoning regarding paragraph B's four subparts, beginning with

---

[4] Paragraph B of Listings 12.04 and 12.06 (which was identical at the time in both) describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations must be the result of the mental disorder described in the diagnostic description. To meet either of these two Listings, a claimant must exhibit at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.04(B), 12.06(B) (2015). On March 27, 2017, the SSA significantly altered the language of these listings.

Listing 12.09 describes behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
    A. Organic mental disorders. Evaluate under 12.02.
    B. Depressive syndrome. Evaluate under 12.04.
    C. Anxiety disorders. Evaluate under 12.06.
    D. Personality disorders. Evaluate under 12.08.
    E. Peripheral neuropathies. Evaluate under 11.14.
    F. Liver damage. Evaluate under 5.05.
    G. Gastritis. Evaluate under 5.00.
    H. Pancreatitis. Evaluate under 5.08.
    I. Seizures. Evaluate under 11.02 or 11.03.

*Id*. § 12.09 (2015). The ALJ mentions analyzing Plaintiff's impairments under Listing 12.09, *see* AR 33-34, but makes no explicit findings related to that Listing. The Court assumes that upon finding that Plaintiff's impairments did not meet or equal the severity of the relevant Listings enumerated in 12.09 for evaluation (in this case, 12.04 and 12.06), the ALJ considered the inquiry into Listing 12.09 to be complete.

activities of daily living. There, the ALJ found Plaintiff to have only a mild restriction. The ALJ observed that Plaintiff was able to do laundry, wash dishes, engage in personal care, make simple meals, and read. AR 33. She also noted that Plaintiff could lift ten pounds, sit for one half hour, stand for twenty minutes, and walk for ten. AR 33. Additionally, the ALJ looked to Plaintiff's VA records, which indicated Plaintiff "was able to perform routine activities of daily living." AR 33 (citing AR 821).

As to social functioning, the ALJ found Plaintiff to suffer moderate difficulties. The ALJ supported her finding by citing to Plaintiff's self-reported "Function Report – Adult." AR 33; *see* AR 247-54. Therein, Plaintiff reported that she occasionally shopped with her husband[5] and socialized with family members on the phone. AR 33.

The ALJ also found Plaintiff to suffer moderate difficulties with concentration, persistence, and pace. She relied again on Plaintiff's self-reporting to observe that Plaintiff could handle her financial affairs and watch television all day, but that she required reminders to attend doctor appointments, and that she followed spoken instructions better than written instructions. AR 34.

The ALJ concluded her paragraph B discussion by finding that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration." AR 34. This same finding also supported the ALJ's conclusion that Plaintiff had failed to establish the 'paragraph C' criteria."[6] AR 34. The ALJ explained that there was "no evidence" of a "residual disease

---

[5] Plaintiff testified at her administrative hearing that when she went shopping she generally waited in the car, as she didn't "like to be around crowds," since they made her "very nervous." AR 76.

[6] Paragraph C of Listings 12.04 and 12.06 (which was also identical at the time of the ALJ's decision in both) describes mental disorders that are serious and persistent. To qualify under this paragraph in either Listing, a claimant must have a medically documented history of the existence of the disorder over a period of at least two years, and evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause [Plaintiff] to decompensate" or one or more years of a history of an "inability to function outside a highly supportive living arrangement." AR 34. Furthermore, she reasoned that Plaintiff failed to establish a "complete inability to function independently outside the area of [her] home," and as a consequence, she concluded that Plaintiff had failed to qualify under the paragraph C criteria of either Listing 12.04 or 12.06. AR 34.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC. AR 34-39. "After careful consideration of the entire record," the ALJ determined that Plaintiff had the residual functional capacity to perform a range of light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; and push and pull 20 pounds occasionally and 10 pounds frequently. She is further limited in that she can only occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl; can never climb ladders, ropes[,] or scaffolds; and must avoid more than occasional exposure to extreme heat or cold. She is also limited to understanding, remembering, and carrying out simple instructions; is able to maintain attention and concentration to perform only simple tasks for two hours at a time without requiring redirection to task; can have only occasional contact with the general public; can have only superficial interactions with coworkers and supervisors; requires work involving no more than occasional change in the routine work setting; and requires work involving very little independent goal setting or decision making.

AR 34-35.

To develop Plaintiff's RFC, the ALJ relied on two principal grounds. First, the ALJ rendered an adverse credibility finding against Plaintiff, finding that although Plaintiff's

---

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life

20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, §§ 12.04(C), 12.06(C).

"medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms" were "not entirely credible." AR 35. The ALJ questioned the severity of Plaintiff's symptoms in sequence, first finding that despite her claims of fibromyalgia, x-rays of her hands in 2011 and of her feet in 2012 showed no abnormalities. AR 35. The ALJ further noted that Plaintiff's doctor had recommended that she exercise to assist with the fibromyalgia, and Plaintiff's "lying around" and "doing nothing" were "not appropriate." AR 36. Next, the ALJ scrutinized Plaintiff's spinal symptoms, observing that she had only "early discogenic disease," "minimal diminution of the L5-S1 level," and "no significant osteophytic formation." AR 36. She similarly discounted Plaintiff's reports of her Crohn's disease forcing her to "wear adult diapers" by recounting that "recent colonoscopies have been completely normal with no evidence of inflammation." AR 36. Lastly, the ALJ noted that despite Plaintiff's assertion that she "was unable to cope with people and [the] demands of her [last] job," Plaintiff reported in March 2013 that she "was not suicidal or homicidal," had a "positive support system," and intended to "reduce social isolation and perform meaningful activities." AR 36. In sum, the ALJ reasoned that "despite her alleged impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction" which replicated the level "necessary for obtaining and maintaining employment." AR 37.

Along with Plaintiff's adverse credibility finding, the ALJ evaluated two lay opinions, multiple medical sources, and an administrative finding from the VA. The ALJ began by assigning little weight to the opinions of Plaintiff's husband and daughter, as she found them to be inconsistent with the medical evidence, lacking in medical training, and possibly colored by affection for Plaintiff. AR 37.

9

She then turned to the medical opinions of record, and began by according "significant weight to the opinions of the non-examining state agency physicians as to the nature and severity of [Plaintiff's] physical impairments and functioning," as their determination "support[ed] [the ALJ's] residual functional capacity [finding] for unskilled work at the light level." AR 37. Nevertheless, she assigned only "limited weight" to these unnamed physicians' opinions concerning Plaintiff's mental impairments and functioning, as she found Plaintiff's limitations "more severe than is indicated in their determinations." AR 37.

The ALJ discounted each of the remaining medical opinions, including that of examining consultative psychologist Robert Kruger, Ph.D. *See* AR 37-38. Dr. Kruger opined that Plaintiff may have marked impairment "with following instructions and maintaining pace and persistence in work environments" and "moderate and at time[s] marked impairment in relationships with coworkers, supervisors[,] and the public." AR 38. The ALJ accorded little weight to this opinion, as she found it rooted in Plaintiff's subjective complaints, lacking in longitudinal history, and based on physical, rather than mental, limitations. AR 38. The ALJ also discounted the statement of treating physician Dr. Brent Van Andel, M.D., as he "list[ed] the impairments for which he provided treatment, but did not offer any physical limitations." AR 38. Similar logic animated the ALJ's approach toward clinical social worker Ms. Meagan Aiken, who also provided a statement on Plaintiff's behalf. The ALJ found that the statement "confirmed participation in individual counseling services," but, because it did "not provide any mental limitations," she assigned it little weight. AR 38.

Lastly, the ALJ considered the ninety percent disability rating ascribed to Plaintiff by the VA. She noted that "because the VA and SSA criteria for determining disability are not identical, an [ALJ] may give less weight to a VA disability rating if there are persuasive,

10

specific, valid reasons for doing so that are supported by the record." AR 38 (citing 20 C.F.R. §§ 404.1504, 416.904 (2015); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006)). And, focusing on the VA rating, the ALJ reasoned that "[t]he VA's decision . . . seems to be based on [Plaintiff's] subjective allegations, particularly because it is based on PTSD and fibromyalgia, both of which are subjective disorders." AR 38. As such, she accorded the rating "little weight," as she found that Plaintiff's "admitted activities" were not consistent with the VA's disability rating "or the inability to perform work activity." AR 38.

The ALJ concluded, based on Plaintiff's adverse credibility finding and opinions listed above, that Plaintiff's "residual functional capacity assessment is supported by the objective medical evidence contained in the record." AR 38. Therefore, the ALJ proceeded to the second phase of step four and found that Plaintiff had past relevant work as an x-ray technician. AR 39. In the third phase of step four, the VE testified that an individual with Plaintiff's RFC would be incapable of performing Plaintiff's past relevant work. AR 81. As a consequence, the ALJ proceeded to step five.

At step five, the ALJ relied on the testimony of the VE to determine what jobs, if any, Plaintiff could still perform. The VE testified that an individual with Plaintiff's RFC could perform the jobs of blending tank tender helper, DOT #520.687-066, bakery worker, DOT #524.687-022, and electronics worker, DOT #726.687-010. AR 40. Based on that testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 40. Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and denied her claim. AR 40.

## V. ANALYSIS

Plaintiff's Motion advances eight allegations of error, but the Court need only address the fifth.[7] There, Plaintiff advances a meritorious challenge that the ALJ committed legal error by failing to analyze and assign weight to the opinion of examining psychologist Dr. Maureen M. McAndrews, Ph.D. Because appropriate analysis of that opinion may affect the disposition of Plaintiff's disability determination, the Court must remand and reverse the ALJ's decision for both proper analysis and support.

### A. The Parties' Positions

Plaintiff's allegation of error, though ultimately meritorious, is not immune from criticism. She begins on solid footing, correctly observing that the ALJ's decision omits any mention of Dr. McAndrews's consultative psychological examination of November 18, 2011. *See* Pl.'s Mot. 15; AR 30-40, 439-51 (Dr. McAndrews's report). She builds upon that foundation by recounting several of Dr. McAndrews's findings that could be interpreted as recommending limitations in excess of those identified in Plaintiff's RFC. *See* Pl.'s Mot. 3. From there, she leverages the ALJ's failure to analyze Dr. McAndrews's opinion as support for several other claims. *See id.* 6-8 (first claim); 20 (sixth claim). But Plaintiff overreaches when she asks this Court to accept the novel proposition that simply because Dr. McAndrews works for the VA, which is an "established health care system," she should therefore be considered "a treating

---

[7] To provide guidance to the ALJ on remand, the Court notes that it also would have strongly considered reversing and remanding based on Plaintiff's third claim. There, Plaintiff argues that the ALJ failed to follow SSR 00-4p by neglecting to ask the VE whether his testimony was consistent with the DOT. Pl.'s Mot. 10-11, ECF No. 20. SSR 00-4p imposes upon ALJs "an affirmative responsibility to ask . . . the VE if the evidence he or she has provided conflicts with information provided in the DOT." SR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)). Here, the ALJ neglected her affirmative duty under SSR 00-4p to ensure consistency between the VE's testimony and the DOT. *See* AR 79-84. This likely represents reversible error and likely would have necessitated remand.

source,"[8] whose "opinion is entitled to the greatest weight, if not controlling weight." *Id.* at 15. To support this rather audacious notion, she urges this Court to consider Dr. McAndrews's opinion within the context of the VA as a whole, arguing that Dr. McAndrews had the longitudinal history of the VA at her disposal, and was "presumably most expert in interpreting the nuances of VA health care practice." *Id.* Put another way, Plaintiff faults the ALJ for seemingly subsuming the evaluation of Dr. McAndrews's opinion within her evaluation of the VA's disability rating writ large, while at the same time (and apparently oblivious to the irony) asking this Court to accord greater weight to Dr. McAndrews's opinion by considering it within the context of the VA system writ large.

The Commissioner responds that "[t]here are two problems with Plaintiff's argument." Def.'s Resp. 20, ECF No. 22. First, she contends that the ALJ "specifically considered" the VA disability *rating*, "which was based on Dr. McAndrews's evaluation." *Id.* The Commissioner further argues that in doing so, the ALJ specifically cited to the VA records (Exhibit F of the Administrative Record), "which included Dr. McAndrews's report." *Id.* Secondly, she maintains that "the ALJ was not required to reference everything in the administrative record and the fact that she did not discuss everything Dr. McAndrews wrote did not mean that she did not consider it." *Id.* (citing *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010); *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009)).

---

[8] Under the treating physician rule, "the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (citing *Langley*, 373 F.3d at 1119). *See* 20 C.F.R. § 404.1527(d)(2) (2017) (defining how the SSA uses medical source opinions, including treating sources, but reserving the final decision on residual functional capacity to the Commissioner); 20 C.F.R. § 416.927(d)(2) (2017) (same).

On January 18, 2017, the SSA amended the language of 20 C.F.R. § 416.927 to make clear that claims filed after March 27, 2017, would be evaluated under § 416.920c. 20 C.F.R. § 416.927 (2017). Section 416.927 now specifies, however, that for claims "filed before March 27, 2017, the rules in this section apply." *Id.*

### B. Dr. McAndrews's Opinion

Dr. McAndrews performed a consultative psychological examination of Plaintiff on November 18, 2011, which focused on assessing Plaintiff's PTSD. AR 439. To that end, Dr. McAndrews observed at the outset that Plaintiff demonstrated "serious symptoms of PTSD in all 3 clusters." AR 440. Plaintiff reported to Dr. McAndrews that she was "extremely uncomfortable in crowds and public places," that her "prominent mood [was] anger" and that "she require[d] little provocation for physical violence." AR 440-41. She also stated that she suffered from multiple crying spells per week, that she was frustrated and irritable, and that she engaged in frequent verbal arguments with her husband that escalated to violence once or twice a year. AR 441. Plaintiff related specific instances where she had "beat[en] up a girl in a bar" for laughing at her, and another where she struck her windshield so violently that it caused nerve damage in her hand. AR 441. In addition, Plaintiff stated she suffered transient passive suicidal ideation. AR 441.

Following her examination of Plaintiff and a review of her service and VA medical records, Dr. McAndrews diagnosed Plaintiff with chronic PTSD. AR 440. She also assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50,[9] noting that Plaintiff "has serious symptoms of PTSD that contribute to deficiencies in her judgment, thinking, mood, social[,] and family life." AR 442. Dr. McAndrews opined that Plaintiff experienced "near continuous agitation and marked impairments in impulse control, such as unprovoked irritability with periods of violence toward strangers and frequently toward her husband." AR 442. She explained that Plaintiff "avoids crowds and public places so she will not be triggered to

---

[9] The Global Assessment of Functioning test is "widely used for scoring the severity of illness in psychiatry." *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2880316/#B14 (last visited November 22, 2017). A GAF score of 50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *See* https://msu.edu/course/sw/840/stocks/pack/axisv.pdf (last visited November 22, 2017).

violen[ce]," and that she similarly "has limited frustration tolerance, and therefore limits her socializing to family members." AR 442. She did note, however, that Plaintiff's "[o]ccupational functioning has been relatively stable with respect to PTSD symptoms." AR 442. When asked to summarize Plaintiff's "level of occupational and social impairment" on a scaled score of one to seven options, Dr. McAndrews rated her in the sixth most severe category, opining that Plaintiff's impairments caused "deficiencies in most areas, such as work, school, family relations, judgment, thinking[,] and/or mood." AR 443. The only selection more severe was "[t]otal occupational and social impairment." AR 443.

### C. Standard for Evaluating Consultative Examiners

Governing regulations require that an ALJ "will evaluate every medical opinion" received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c) (2017).[10] The same regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2). SSR 96-6p[11] also provides guidance on how to evaluate opinions of consultative examiners, including opinions of psychological consultants. SSR 96-6p, 1996 WL 374180 (July 2, 1996). Specifically, it directs that findings of fact made by a consultative examiner "must be treated as expert opinion evidence of nonexamining sources." *Id.* at *1. ALJs may not ignore these opinions and must

---

[10] On January 18, 2017, the SSA amended the language of 20 C.F.R. § 1527 to make clear that claims filed after March 27, 2017, would be evaluated under § 404.1520c. 20 C.F.R. § 1527 (2017). Section 1527 now specifies, however, that for claims "filed before March 27, 2017, the rules in this section apply." *Id.*

[11] On March 27, 2017, the SSA rescinded SSR 96-6p. *See* 82 Fed. Reg. 15263-02 (Mar. 27, 2017). Nevertheless, because SSR 96-6p was not yet rescinded at the time of the ALJ's decision, and the new rules do not apply here, the Court considers SSR 96-6p good authority in this case.

explain the weight given to these opinions. *Id.* at *2. Yet, because opinions of consultative examiners are not accorded the same value as treating sources, SSR 96-6p mandates as follows:

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

### D. The ALJ's Failure to Evaluate Dr. McAndrews's Opinion Constitutes Reversible Legal Error

The ALJ's decision must be reversed and remanded, notwithstanding the parties' inability to identify why. For her part, Plaintiff asks this Court to accord controlling weight to Dr. McAndrews's opinion under the treating physician rule while ignoring the fact – demonstrated by the record – that Dr. McAndrews *never* treated Plaintiff. *See* Pl.'s Mot. 15. The Court declines the invitation.

The Commissioner's two arguments, although less overtly flawed, also fail upon closer inspection. As to the first, this Court cannot agree with the Commissioner that the ALJ's general consideration of the VA's disability *rating* absolved the ALJ of her responsibility to separately evaluate Dr. McAndrews's opinion. *See* Def.'s Resp. 20. The Commissioner cites no authority for this proposition, as it flies in the face of the SSA's own regulations requiring an ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. § 1527. Rather, the Commissioner cites to the record, through the *seemingly* supportive statement that while evaluating the VA rating, "the ALJ specifically cited to Exhibit 3F, which included Dr. McAndrews's report." Def.'s Resp. 20. What the Commissioner fails to mention is that of the ten citations the ALJ

16

makes to Exhibit F (which represents Plaintiff's entire VA medical record), not one of them is to Dr. McAndrews's report. AR 35 (citing AR 383 (hand x-ray)), AR 36 (citing AR 427 (pain medications), AR 422 (support system), AR 480-81, 507, 524 (Crohn's disease), AR 407, 507 (spinal diagnostics)), AR 37 (citing AR 422 (Plaintiff's reason for leaving employment)), AR 38 (citing AR 403 (Plaintiff's VA disability percentages)). Thus, despite demonstrating the ability to cite to nearly a dozen VA records, the ALJ neglected to evaluate and weigh the one VA medical record that both demanded her scrutiny and contained sufficient information for her to carry out that function. *See* 20 C.F.R. § 1527. *Compare* AR 38 (discounting the opinions of VA medical sources Dr. Van Andel and Ms. Aiken for containing insufficient information regarding functional limitations to properly evaluate and assign weight). It is just as plausible that Dr. McAndrews's opinion is the one record the ALJ neglected to review during the administrative process as it is that the evaluation of that record informed her assessment of the VA rating generally, and it is that uncertainty the governing regulations aim to preclude.

The Commissioner also argues that "the ALJ was not required to reference everything in the administrative record and the fact that she did not discuss everything Dr. McAndrews wrote did not mean that she did not consider it." *Id.* (citing *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010); *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009)). The Court recognizes that an ALJ is not required to "discuss every piece of evidence," *see Franz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007), but nothing in *Wall* stands for the proposition that an ALJ's decision can be completely silent on a medical opinion that regulations otherwise *require* her to evaluate. *See Wall*, 561 F.3d at 1067. To the contrary, in *Wall*, the Tenth Circuit observed that "the ALJ discussed all of the relevant medical evidence in some detail," *see id.* at 1068 (citation and internal quotation marks omitted), which allowed the court to take the ALJ "at his word."

17

*Id.* at 1070 (citation and internal quotation marks omitted). The same cannot be said here, as the ALJ failed to specifically discuss relevant medical evidence in the record. Consequently, *Wall* cannot bear the weight the Commissioner seeks to place on it.

The Commissioner's reliance on *Wilson* is similarly flawed, as the *Wilson* court analyzed a claimant's challenge that an ALJ's failure to discuss two "entry reports" constituted reversible error. *See* 602 F.3d at 1148. The Court agrees with the Commissioner that *Wilson* states the familiar proposition that an ALJ is not required to discuss every piece of evidence in the record. *See id.* However, the *Wilson* court based its decision on the fact that the two entry reports in question were cumulative with respect to the undisputed evidence that the claimant "has serious long-term mental health limitations that clearly impact her life." *Id.* Furthermore, neither entry represented a complete medical opinion, nor did either ascribe limitations. *See id.* By contrast, the instant matter presents a completed psychological consultative examination, performed by a doctoral-level psychologist, recommending a distinct scope of limitations and plaintiff's social and occupational employment. The Court therefore finds the Commissioner's reliance on *Wilson* to be misplaced, as Dr. McAndrews's opinion is significantly probative and is not duplicative of any other evidence in the record.

The Court finds that the ALJ committed legal error by failing to make manifest her evaluation of the medical opinion of Dr. McAndrews. *See* 20 C.F.R. § 1527 (requiring an ALJ to consider all medical opinions, regardless of their source). Furthermore, Dr. McAndrews's opinion demonstrates a unique methodology among the medical records, a distinct GAF score, and severe limitations that may impact the ALJ's ultimate determination of disability. Whether or not the opinion militates toward a finding of disability is not the province of this Court to

decide in the first instance, but one committed by regulation to the ALJ. To ensure the proper evaluation is done, the Court will grant Plaintiff's Motion and remand the instant matter.

## VI. CONCLUSION

For the reasons articulated above, the Court finds that the ALJ's failure to consider and evaluate the opinion of consultative examiner Dr. Maureen M. McAndrews, Ph.D., represents reversible legal error.

**IT IS THEREFORE ORDERED** that Plaintiff's "Motion to Reverse and Remand for a Rehearing With Supporting Memorandum" [ECF No. 20] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED** and that the instant cause is **REMANDED** for further review consistent with this opinion**.**

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*